IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| ABC HOLDINGS, INC., and CHEM-SAFE ENVIRONMENTAL, INC., ) ) ) | No. 30770-1-III Consolidated with No. 31712-9-III and |
| Appellants, ) | No. 32301-3-III |
| ) | |
| v. ) | |
| ) | PUBLISHED OPINION |
| KITTITAS COUNTY, ) | |
| ) | |
| Respondent. ) | |

BROWN, A.C.J. – Today, we decide three consolidated appeals. First, Chem-Safe

Environmental, Inc. and its parent company, ABC Holdings, Inc. (collectively CSE)

appeal the superior court's public nuisance order, affirming the Kittitas County hearing

examiner's decision upholding the county's notice of violation and abatement (NOVA)

for handling moderate risk waste (MRW) without proper county permits. Second, CSE

appeals the court's contempt order based on its failure to adhere to the NOVA. Third,

CSE appeals the court's denial of its motion to vacate the NOVA. CSE contends (1) the

NOVA was factually unsupported, beyond the county's authority, and procedurally

defective, (2) the court erred in finding contempt, and (3) the court erred in denying its

reconsideration request in light of newly discovered evidence. We conclude the

contempt appeal is moot because CSE has since purged the contempt without sanctions and we reject CSE's remaining contentions. Accordingly, we affirm.

FACTS

The facts are drawn primarily from the hearing examiner's unchallenged findings of fact. From July 10, 2008 through January 27, 2011, CSE collected MRW materials on its property before transporting the waste to disposal facilities. CSE claimed it was in the process of obtaining a permit. On January 27, 2011, a county's health department inspector, James Rivard, visited CSE's property. He had inspected the site in the past and had warned CSE it needed a permit. Mr. Rivard found MRW material on the property, which Mr. Rivard believed was dry cleaning solvent (dichloromllthyl ether), labeled P016—a hazardous waste number designated by 40 C.F.R. § 261.33. CSE did not have a permit from the county's health department to collect MRW or operate a MRW facility on the property, violating Kittitas County Code Ordinance 1999-01 and chapter 173-350 WAC.

The county issued a NOVA to CSE including a description of the alleged violation, notice of a $500 fine payable within 30 days from the end of the appeal period, a description of abatement action necessary, a statement that CSE could request an administrative hearing, and notice the county may assess costs of abatement against CSE. The NOVA ordered CSE to "test the concrete floor and ground at the facility site for contamination. All test methods and sample locations must be pre-approved by [the County] in consultation with [the Department of Ecology] prior to any testing. Testing

2

cannot be performed by [CSE], but must be done by a neutral 3rd party who is approved by [the County] in consultation with DOE." Clerk's Papers (CP) at 536. Lastly, the county concluded CSE's actions amounted to a public nuisance.

CSE requested an administrative hearing but did not dispute it had been operating during Mr. Rivard's investigation without a required permit. CSE, however, argued it was in the process of applying for the proper permit and asserted the county had approved its operation during the application period. The county pointed out Mr. Rivard's declaration submitted to the hearing examiner made reference to a drum observed at the CSE facility that Mr. Rivard initially believed contained "P016." The county explained to the hearing examiner Mr. Rivard's understanding of the label was mistaken and that it actually listed "D016." The county informed the hearing examiner that D016 was listed as a dangerous waste per WAC 173-303-090(8)(c) and at 40 C.F.R. § 261.21.

The hearing examiner found the county had allowed CSE to operate their waste facility during the application process, but were not estopped to revoke that consent to protect the public health, safety and welfare. The examiner found the county lacked authority to waive the permitting requirements. And, that CSE "does not dispute that they operated without the required license/permit." CP at 8. The examiner affirmed the NOVA and denied reconsideration. By this time, CSE had ceased operating at its property.

3

In March 2012, CSE appealed to the superior court; the superior court affirmed, filing a memorandum decision.

In April 2012, CSE appealed here and requested the superior court stay NOVA enforcement until this appeal was decided. CSE mainly wanted to stay the required testing of the facilities' floor and ground below. In June 2012 the superior court denied CSE's stay request, finding it did not have jurisdiction because a notice of appeal had been filed. This court directed the parties to RAP 7.2 and RAP 8.1 regarding post judgment motions and the right to stay enforcement of trial court decisions.

Based on this court's directive, CSE moved for reconsideration of the June 2012 order denying its stay request, based on CR 59(a)(8) (error of law), or alternatively, under CR 60(b)(3) (newly discovered evidence based on Mr. Rivard's later declaration regarding the drums' labeling). In October 2012, the superior court denied CSE's stay request, but did not address its CR 60 motion. In November 2012, CSE unsuccessfully requested reconsideration of the court's denial of its stay motion.

In April 2013, the county requested a show cause hearing on why CSE should not be found in contempt for failing to adhere to the NOVA. In May 2013, the court found CSE in contempt, stating, "The contempt may be purged if appellants both formulate and execute a satisfactory sampling/testing plan." CP at 885. CSE appealed the court's contempt order to this court. In December 2013, the court ruled CSE had purged the contempt and denied the county's request for sanctions.

4

No. 30770-1-III *cons. w/* 31712-9-III & 32301-3-III
*ABC Holdings, Inc. v. Kittitas County*

In February 2014, CSE requested clarification of the court's November 2012 denial of its request for reconsideration. Filing another memorandum decision, the superior court clarified its denial of CSE's motion to vacate based on newly discovered evidence, finding Mr. Rivard's subsequent declaration regarding the drums' labeling was before the hearing examiner and not newly discovered evidence. CSE separately appealed that ruling as well. This court consolidated the three matters.

## ANALYSIS

### A. Permit Requirement

The issue is whether the hearing examiner erred in affirming the county's NOVA for CSE's operation without a permit. CSE contends it was not required to have a permit, the NOVA was issued without due process, and the required abatement amounts to an impermissible taking.

The superior court reviews the administrative record before the body or officer in the local jurisdiction authorized to make the final determination. *Citizens to Preserve Pioneer Park v. City of Mercer Island*, 106 Wn. App. 461, 470, 24 P.3d 1079 (2001). We stand in the same position as the superior court and review the record before the hearing examiner. *Thornton Creek Legal Def. Fund v. City of Seattle*, 113 Wn. App. 34, 47, 52 P.3d 522 (2002). We review challenged findings of fact under the substantial evidence standard and conclusions of law de novo. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Since CSE does not

5

challenge the findings of fact, we consider them verities here. *Anderson v. Pierce County*, 86 Wn. App. 290, 307 n.9, 936 P.2d 432 (1997).

Initially, the county argues this appeal is not a matter of right because the superior court heard the matter like an appeal or review of an order by a court of limited jurisdiction. But, a court of limited jurisdiction is any court organized under Titles 3, 35, or 35A RCW. RCW 3.02.010. The hearing examiner is not a court organized under any of those titles, and is therefore not a court of limited jurisdiction. Thus, the superior court's orders were final orders appealable as a matter of right under RAP 2.2(a)(1).

CSE no longer argues it was a generator of solid waste, and instead argues it was not required to obtain a county permit because it was a transferor/transporter of MRW regulated by state and federal agencies. The county responds this issue was not before the hearing examiner and, therefore, is not properly before us. "Our cases require issues to be first raised at the administrative level." *Citizens for Mt. Vernon v. City of Mt. Vernon*, 133 Wn.2d 861, 869, 947 P.2d 1208 (1997). Furthermore, "[i]n order for an issue to be properly raised before an administrative agency, there must be more than simply a hint or a slight reference to the issue in the record." *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 670, 860 P.2d 1024 (1993).

The hearing examiner found CSE operated by "collecting moderate risk waste materials on the Property before transporting . . . to disposal facilities" but CSE had not "obtained a permit to collect . . . waste . . . from [the] County." CP at 5. The examiner found, "a violation of the KCC Ordinance 1999-01 and WAC 173-350 occurred due to

6

the existence of an unpermitted . . . moderate risk waste facility." CP at 5. CSE did not contest and even conceded the permit requirement at the administrative hearing. Indeed, CSE initially defended, by arguing, it was in the process of obtaining a permit when the county issued the NOVA. The hearing examiner's unchallenged findings of fact clearly show CSE failed to obtain a permit, a violation of local and state administrative codes. Thus, the issue of whether a permit was required was not raised below.

Requiring resolution of an issue at the administrative level is more than "'simply a technical rule of appellate procedure; instead, it serves an important policy purpose in protecting the integrity of administrative decision-making.'" *Pacific Land Partners, LLC, v. Dep't of Ecology*, 150 Wn. App. 740, 754, 208 P.3d 586 (2009) (citation omitted). The issue of whether CSE was required to obtain a permit from the county should have been raised at the administrative level and is not properly before us. Even so, we note CSE's argument it was solely a transferor/transporter of MRW waste excluded from the county's permit requirements lacks merit.

RCW 70.95.160 directs jurisdictional health boards to adopt regulations governing solid waste handling "including but not limited to the issuance of permits and the establishment of minimum levels and types of service for any aspect of solid waste handling." MRW is defined as a solid waste. RCW 70.105.010(13).

Pursuant to chapter 173-350 WAC, the county adopted solid waste ordinance 1999-01 to "govern the handling, storage, collection, transportation, treatment,

7

utilization, processing and final disposal of all solid waste within Kittitas County, including the issuance of permits and enforcement." Board Record (BR) at 27. The regulations are implemented by a general permit process: "all solid waste handling, storage, collection, transportation, treatment, utilization, processing, recycling, recovery, and final disposal facilities subject to these regulations are required to obtain permits." BR at 48. This section specifies "[n]o solid waste disposal site or facility, solid waste handling facility, shall be operated, established, substantially altered, expanded or improved until the county, city or other person operating or owning such site has obtained a Solid Waste Handling Permit from the Health Department pursuant to the provisions of this section." BR at 49. "We interpret local ordinances the same as statutes." *Sleasman v. City of Lacey*, 159 Wn.2d 639, 643, 151 P.3d 990 (2007). An unambiguous ordinance will be given its plain meaning. *Id.* While we acknowledge the parties struggle to reconcile seemingly overlapping regulatory schemes as the focal point of their problem, we need not attempt to voice our view on this problem because our dispute resolution does not allow us to express advisory opinions. Our record is clear.

The unchallenged findings show CSE was in the business of "collecting moderate risk waste materials on the Property before transporting." CP at 5. This handling, collecting, and storing is covered by ordinance 1999-01 and requires a permit. CSE claims, however, it was exempt from the MRW facility permit requirement because it possessed approval by the Department of Ecology (DOE) and the Environmental

Protection Agency (EPA). While CSE possessed an EPA/State Identification Number for tracking waste during transportation, nothing in the solid waste handling regulations (chapter 173-350 WAC) relieves CSE of local permit requirements for storage facilities. Given the heavily regulated nature of dangerous waste and solid waste in Washington, we reject any implicit exemption in the Ordinance 1999-01 permit requirements.

CSE argues alternatively it was in the process of obtaining a permit and had been assured by Mr. Rivard it could operate during the application period without a permit, thereby estopping the county from arguing CSE violated Ordinance 1999-01. But estoppel can solely be invoked against the government on a showing of clear and convincing evidence of specified elements, including proof that estoppel will not impair governmental functions. *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993). CSE made no such showing below. We reject CSE's estoppel arguments because the gravamen of Washington's solid waste regulations is the delegation of authority to local jurisdictions to impose permit requirements; accepting CSE's argument would conflict with this important governmental function.

CSE next argues the county improperly issued the NOVA without showing a public nuisance. Generally, abatement is a remedy against a public nuisance. RCW 7.48.200. Kittitas County Code (KCC) 18.01.010(1) declares a public nuisance exists for violations of Kittitas county ordinances and codes related to, among other things, environmental health and safety. Specifically, pursuant to KCC 18.01.010(1)(k) any

9

violation of the Kittitas County health ordinances and codes, "including but not limited to, Solid Waste Ordinance(s)" constitutes a public nuisance.

As analyzed above, CSE did not comply with local permitting ordinances. This noncompliance is considered a public nuisance under the plain terms of KCC 18.01.010(1)(k) and is sufficient to justify the NOVA.[1] Accordingly, we conclude the hearing examiner did not err in concluding likewise.

CSE next argues it was denied due process, claiming "specific Constitutional protections against retroactive penalties" and "due process requirements have not been met." Appellant's Br. at 34. The fundamental requirements of procedural due process are notice and opportunity to be heard. *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991). Based on our record, CSE was provided notice and an opportunity to be heard regarding the NOVA as evidenced by the appeal to the hearing examiner. Moreover, the NOVA did not deprive CSE of any constitutionally protected property interest. The NOVA did not cause a deprivation of any CSE permitted activity. A violation notice, even if final, "is not the type of encumbrance that constitutes a significant property interest giving rise to procedural due process." *Cranwell v. Mesec*, 77 Wn. App. 90, 111, 890 P.2d 491 (1995). Accordingly, the NOVA alone does not implicate a property interest giving rise to due process requirements; rather, it required

---

[1] CSE challenges the hearing examiner's conclusion that the presence of dangerous and/or hazardous wastes and labeling and storage violations constituted a public nuisance. Because the lack of the permit satisfies the public nuisance finding, we need not further discuss this NOVA challenge.

10

CSE to take action in accordance with its terms. In sum, we conclude CSE was not unconstitutionally deprived of any protected property interest.

CSE lastly argues the county's NOVA constitutes a "taking." Appellant's Br. at 37. CSE cites to *Koontz v. St. Johns River Water Mgmt. Dist.,* ___ U.S. ___, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013) in footnote 53 of its brief to support its argument. But, the *Koontz* holding applies solely in the context of the land use permit process where a government approval was conditioned on coercively compelling a landowner to give up property. *Id.* at 2603. Our case is distinguished from *Koontz* because it concerns regulatory permit enforcement and does not compel a landowner to give up property.

Given all, we hold CSE fails to show the hearing examiner erred in concluding the county properly issued the NOVA because it lacked the required county permit.

### B. Post Judgment Motions

The issue is whether the trial court erred by abusing its discretion in denying CSE's postjudgment CR 59 and CR 60 motions. CSE contends the court should have stayed enforcement of the NOVA's testing requirements because it was invalid and should have set aside the judgment based on Mr. Rivard's alleged recantation.

We review rulings under CR 59 and 60 for abuse of discretion. *Sommer v. Dep't of Soc. & Health Servs.,* 104 Wn. App. 160, 170-71, 15 P.3d 664 (2001); *Shaw v. City of Des Moines,* 109 Wn. App. 896, 900, 37 P.3d 1255 (2002). Discretion is abused if it is exercised without tenable grounds or reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

11

Initially, the county argues CSE's clarification motion was untimely. In June 2012 the superior court denied CSE's stay request. Since the matter was on appeal before this court, a commissioner of this court directed the trial court to RAP 7.2 and RAP 8.1. Based on this court's directive, CSE filed a motion for reconsideration. In October 2012, the superior court reconsidered and denied CSE's stay request, but did not address its CR 60 motion based on newly discovered evidence. In November 2012, CSE unsuccessfully requested reconsideration of the court's denial of its stay motion. In February 2014, CSE requested clarification of the court's November 2012 denial of its request for reconsideration, arguing the court overlooked its CR 60 motion in 2012.

We reject this contention because under CR 60(a), "mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time." The court overlooked an issue raised by CSE in 2012. Two years later, and while litigation continued, CSE brought the omission to the court's attention. This is reasonable under CR 60(a).

Turning to the merits, the trial court made clear it did not rely to its detriment on a false statement of Mr. Rivard's to justify relief. The superior court clarified its denial of CSE's motion to vacate based on newly discovered evidence, finding Mr. Rivard's later declaration regarding the drums' labeling was before the hearing examiner and not newly discovered. These findings are tenable grounds to justify the court's denial of CSE's postjudgment relief request.

12

CSE's judicial estoppel theory lacks merit. For judicial estoppel to apply, an inconsistent position first asserted must have persuaded the court to accept its position. *Falkner v. Foshaug*, 108 Wn. App. 113, 125, 29 P.3d 771 (2001). The court mentioned the mistake issue in Mr. Rivard's first declaration and found the error was revealed at the administrative hearing level; thus, it concluded the "substantive relevance" of the issue "would not change this court's decision to affirm the hearing examiner's determination that labeling and storage violations occurred and that Chem-Safe maintained a public nuisance." CP at 1022. The court's analysis shows no inconsistent position originally asserted. Without such, CSE's judicial estoppel claim fails.

## C. Contempt

CSE contends the trial court erred in finding it in contempt of the trial court's May 2012 final order because NOVA improperly compelled it to have a third party test its facility, did not provide a way to purge the contempt, and denied due process by precluding it from a hearing to show the NOVA requirements were improper.

Contempt of court includes the intentional disobedience of any lawful judgment. RCW 7.21.010(1)(b). If the court finds "that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court." RCW 7.21.030(2). We review contempt findings for an abuse of discretion. *Moreman v. Butcher*, 126 Wn.2d 36, 40-41, 891 P.2d 725 (1995).

"A case is moot if a court can no longer provide effective relief." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). Generally moot issues are

13

dismissed on appeal. *City of Seattle v. Johnson*, 58 Wn. App. 64, 66-67, 791 P.2d 266 (1990). Here, the county requested a show cause hearing on why CSE should not be found in contempt for failing to adhere to the NOVA. CSE failed to meet its burden. Thus, the court found CSE in contempt, and ordered, "The contempt may be purged if appellants both formulate and execute a satisfactory sampling/testing plan." CP at 885. CSE satisfied the required testing. The court purged the contempt finding and denied the county's sanctions request. Therefore, we can provide no further effective relief. Accordingly, we conclude the contempt issues are moot.

Affirmed.

Brown, A.C.J.

I CONCUR:

Korsmo, J.

14

No. 30770-1-III; 31712-9-III; 32301-3-III

Fearing, J. (concurring) — I concur with the majority's decision in each of the three consolidated appeals. I write separately because I do not join in one of the majority's ruling in the first appeal that challenges the validity of the notice of violation and abatement (NOVA). The majority holds that Chem-Safe Environmental, Inc. (CSE), was not exempt from the moderate risk waste (MRW) facility permit required by Kittitas County despite holding a permit from the Washington State Department of Ecology and Environmental Protection Agency to handle dangerous waste (DW), a level of waste more risky than MRW. I find the law ambiguous on whether one holding a permit to handle DW must also obtain a permit to handle MRW. Therefore, I would avoid the issue and resolve the first of the three appeals on the sole basis of invited error.

Kittitas County contends that CSE failed to raise the issue of an exemption before the hearing examiner and thus waived the issue on appeal. As mentioned in passing by the majority, this court will not review an issue that was not raised before an administrative body unless the appellant (1) did not know and had no duty to discover facts giving rise to the issue, (2) did not have an opportunity to raise the issue before the agency, or (3) the issue arose from a change in controlling law or a change in agency

action and the interests of justice require its resolution. RCW 34.05.554(1)(d); *Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt Hearings Bd.*, 160 Wn. App. 250, 271-72, 255 P.3d 696 (2011). None of these exceptions apply.

CSE contends it forwarded its exemption argument before the hearing examiner, and it cites to Clerk's Papers at 468 for this contention. During the administrative hearing on that page of the transcript, CSE represented to the hearing examiner that the Department of Ecology originally told CSE that it needed the county permit, but the county disagreed. Later, according to the representation, Kittitas County changed its mind and told CSE that it needed a permit. CSE argued to the hearing examiner that the county should be estopped from demanding a county permit to handle MRW. Nevertheless, CSE did not argue that it was exempt because it also handled DW.

In oral argument before this court, CSE also contended that its various briefs submitted to the hearing examiner forwarded the exemption argument. CSE has failed to cite to any portion of the briefs that presented this argument, however. In its opening brief, filed March 23, 2011, CSE maintained that the lack of a permit was not a public nuisance; any public nuisance did not justify the issuance of a NOVA; it timely submitted a completed application for a county permit; the county agent, James Rivard, consented to CSE operating without a permit; and CSE will eventually procure a permit. Board Record (BR) at Index #56. In its supplemental brief, filed April 14, 2011, CSE argued

that Kittitas County erred in identifying the substance in a drum. BR at Index #60. CSE did not assert an exemption in either brief.

CSE's response brief, filed April 21, 2011, repeated earlier arguments and added that some of its problems arise from handing DW, not MRW. CSE did not assert that, since it had a permit to handle DW, it did not need a permit to handle MRW. More importantly, CSE wrote, "The issue is not whether County Health can require an MRW permit but whether it can retroactively revoke the right it has granted to [p]etitioner to operate without one and to fine petitioner based thereon." BR at Index #63, page 9 of 19.

In its brief in support of a motion for reconsideration, filed May 26, 2011, CSE argued estoppel; it was a small generator; and invasive testing was not needed at the site. CSE further wrote, "Appellant does not urge that it is not required to obtain an MWF permit. It applied for such a permit and there is a modified MWF permit application pending." BR at Index #71, page 4 of 20. Thus, in two briefs, CSE told the hearing examiner it needed a county MRW permit. CSE asserted no exemption from the permit requirement.

CSE contends it may raise the exemption for the first time on appeal under RAP 2.5(a)(3). This rule's subsection permits the raising of a new issue on appeal if the issue involves a manifest constitutional error. I question whether any error is constitutional in nature or manifest in character. I need not address this question, however. CSE

3

Nos. 30770-1-III; 31712-9-III; 32301-3-III
*ABC Holding, Inc. v. Kittitas County*

affirmatively told the hearing examiner that it needed a permit and was engaged in the process of procuring the permit.

If the hearing examiner committed any error, CSE encouraged the error. Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law during a hearing and then complain of it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995). The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996); *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995).

I CONCUR:

_____
Fearing, J.

4